JUNE TERM, 1915. 273

*88 N. J. L.*     A. & S. Silk Dyeing Co. v. E. Jersey Water Co.

THE AUGER & SIMON SILK DYEING COMPANY, PLAINT-
IFF-APPELLEE, v. THE EAST JERSEY WATER COM-
PANY AND THE JERSEY CITY WATER SUPPLY COM-
PANY, DEFENDANTS-APPELLANTS.

Argued June 24, 1915—Decided November 15, 1915.

Where a riparian owner diverts water from a running stream, and
so uses it that it becomes polluted to the extent that it is unfit
for domestic and other reasonable riparian uses, and when re-
turned, as it must be, to the stream, it appreciably impairs the
quality of the water, to the injury of all the people of the state
for whom the residue of all flowing water, after reasonable ri-
parian use, is held, a public nuisance is committed, and such
unlawful use is not the reasonable use which a riparian owner
is entitled to make of passing water, and for the deprivation of
water intended to be so used he is only entitled to nominal dam-
ages because the injury he suffers, if any, is that he is deprived
of the means of committing a public nuisance.

On appeal from the Supreme Court.

For the plaintiff, *William I. Lewis* and *Griggs & Harding.*

For the defendants, *Collins & Corbin, John B. Humphreys*
and *Michael Dunn.*

The opinion of the court was delivered by

BERGEN, J.    The plaintiff instituted separate actions
against the East Jersey Water Company and the Jersey City
Water Supply Company, respectively, which were tried by
consent before the same jury, resulting in a judgment in
favor of the plaintiff in each case—against the East Jersey
Water Company for $3,636.24 and against the other defend-
ant for $7,031.77.    Each defendant appealed to this court,
where the cases were argued together under the same ex-
ceptions.    Among the numerous exceptions, on which errors
are assigned, is one to the refusal of the trial court to charge,
as requested, "if they [the jury] should find that the plaintiff

would use the diverted water, if it were not diverted, for the purpose of further polluting the river, then the plaintiff cannot claim more than nominal damages from the defendants, who stand in the shoes of the municipalities whom they are supplying with the water, for depriving the plaintiff of that water," and another for refusing to charge, as requested, "that the plaintiff had no right to complain of the diversion by the defendants if you find that the only damage the plaintiff suffered was being thereby prevented from committing a nuisance." The facts pertinent to these requests were that the defendants as upper riparian owners were diverting water from the Passaic river for the purpose of supplying certain municipalities with potable water, and that such diversion deprived the plaintiff of a sufficient quantity of water to answer, what it claims to be, such reasonable use to which it is entitled as a riparian owner; that each of the plaintiffs is the owner of land along the river below the point where the defendants abstract the water and on which they maintain and operate silk dyeing works, and for the purpose of carrying on that business draw water from the river, which after use is returned to the river in a polluted condition. Mr. Auger, a witness for the plaintiff, testified that the water discharged from plaintiff's works was colored and not fit to drink, bathe in or for cattle to drink. Whether this water was polluted, and to what extent, and whether it appreciably injured the quality of the water in the river was a jury question (*Wood Nuis.* 321), the consideration of which was taken from it by the refusal of the court to charge as requested, and, therefore, in dealing with these requests we must assume that the jury could have found that the water was restored to the river in such a polluted condition as to be no longer fit for use as potable water. The plaintiff bases its right of action upon the fact that it is a riparian owner and therefore entitled to such use of the water as would naturally flow over its lands, if not diverted by the defendant, as incidental to such ownership, and the question presented is whether such use includes the right to pollute the water to the extent of rendering it unfit for use by man or beast, and then return

it in that condition to the stream. That its diversion by the plaintiff for the mere purpose of returning it in a polluted condition is not included in the reasonable use to which a riparian owner is entitled, is, we think, beyond successful contest, at least in this state, where we have held in this court that the riparian owner must return water he may divert from a running stream for his reasonable use, undiminished in quantity and unimpaired in quality, subject to its use "in a reasonable manner for domestic and irrigating purposes." *Doremus* v. *Paterson*, 65 *N. J. Eq.* 711. There is no difference in principle between an initial purpose to divert for the mere purpose of pollution and a diversion for the purpose of a use which must result in its contamination, for in either case it is impregnated when returned with substances which impair its quality. After the exercise of legitimate rights by the riparian owner, "there remains a residuum of common or public ownership that under our system rests in the state as a trustee for all our people." *McCarter, Attorney-General,* v. *Hudson County Water Co.,* 70 *N. J. Eq.* 695. The pollution of the passing water of a stream, which after its reasonable use by upper riparian owners is held by the state for the use of all of its citizens, when such pollution renders it unfit for ordinary domestic uses because it has been diminished in quality, is a public nuisance, which under section 215 of our Crimes act is declared to be a misdemeanor. It is no answer to a criminal prosecution for creating a public nuisance that a lower riparian owner may have an action for special damage, because that is a personal right which in no way relieves the wrong-doer from the consequences of a crime against the public, for whom the residue of the water is to be conserved by the state. In the present cases we have a plaintiff claiming damages because it is not allowed to divert, as riparian owner, the water of a running stream in order that it may be so used that when returned to the stream it is in a condition as to quality which is prohibited by law. In other words, it claims damages because it is deprived of the means of committing an unlawful act. The record discloses facts

from which a jury might find that the use to be made by the plaintiff of the water, of which it claims to have been deprived, was not within the meaning of the term "reasonable" as applicable to cases of this nature, for it cannot be that a riparian use of passing water, in which the owner has a limited right, the effect of such use being to return it to the stream in such a polluted condition that it is unfit for use by others having at least equal rights therein, is within the right of a riparian owner which is confined to a reasonable use for domestic and other legally recognized purposes. We are of opinion that when the riparian owner abstracts water from a running stream for the purpose of so using it that it will be returned to the stream in such a polluted condition as to appreciably deprive it of its natural qualities and render it unfit for the use of the public, thereby committing a nuisance, he is not making the reasonable use thereof to which he is entitled as such owner, and that any damage he may suffer because he is not able to do this because of the act of the defendant, is not more than nominal, if any, and therefore it was error to refuse the requests above stated. It is no answer to an action or indictment for a nuisance to show that a great many others are committing the same species of nuisance upon the stream, for if the defendant's acts appreciably add to the pollution, they create a nuisance. *Wood Nuis.* 507. The result which we have reached on this branch of the case makes it unnecessary to consider the other exceptions sealed in these cases. The judgment in each case will be reversed and a new trial awarded.

GARRISON, J. (dissenting). I am unable to concur in the reversal of this judgment upon the ground stated in the opinion.

The responsibility of the plaintiffs to lower riparian owners and their liability to the State of New Jersey, or some of its public agencies, are distinct questions that could not be tried out in this action and were not attempted to be because of the lack of proper parties, proper pleadings and proper issues.

The issues that were involved in this suit with parties were correctly submitted to the jury under what was in effect the law of the case. There was in my opinion no trial error.

*For affirmance*—GARRISON, TRENCHARD, BLACK, WHITE, TERHUNE, JJ. 5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, TAYLOR, JJ. 8.